[No. AO20189. First Dist., Div. One. Feb. 15, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
DAVID EARL JOHNSON, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, Attorney General, Thomas A. Brady and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Appellant.

Thomas R. Kenney and Kenney & Barbose for Defendant and Respondent.

## OPINION

**NEWSOM, J.**—Respondent and Twila Rickley (hereinafter Twila) lived together from September 1972 until May 1980, when they separated. They never married, and are the natural mother and parents of two children: Andrew Shannon Johnson, born May 22, 1975, and Taylor Scott Johnson, born April 9, 1977.

On June 3, 1980, a month after their separation, Twila filed a complaint in superior court (Civ. Code, § 7004, subd. (a)(4)), asking for a judgment decreeing that a father and child relationship exists between respondent and the children, granting joint legal custody of the children with physical custody to her and visitation to respondent, and awarding her child support and attorney fees. The complaint was apparently never served on respondent.

At the time of the couple's separation, in 1980, they were living in Occidental, California. Twila then moved to Camp Meeker, California, taking the children with her. Respondent maintained regular contact with the children, spending each weekend with them at his residence. During the summer of 1981, the children spent about half their time with respondent, returning to Twila's home four or five days before the start of school.

On September 6, 1981, respondent visited the children, ostensibly to bring them school clothes. Twila agreed he could take the children out for ice cream before dinner. Respondent left with the children at 6 p.m., promising to return them for dinner an hour later. When neither respondent nor the children returned, Twila contacted the Guerneville police, but was told nothing could be done without a court order.

Twila attempted to contact respondent by calling and visiting his parents' residence, but did not discover the whereabouts of the children until September 7, when she received a phone call from respondent warning that if she wanted to see her children again she should agree to give him custody. He also said she would be hearing from his lawyer.

On September 15, 1981, a few days after the children had disappeared, an order to show cause, including a temporary custody order giving custody to Twila, was filed. An investigator for Twila's attorney made numerous unsuccessful efforts to locate and serve defendant.

Twila tried to find the children by visiting Santa Cruz, Sunol and Los Angeles. She glimpsed them twice: once in a pickup truck with respondent and his present wife, and another time in the yard of respondent's in-laws. Not knowing what to do, she returned to Santa Rosa and from there contacted respondent. She did not see the children again until April 6, 1982, in a childrens' facility in Norman, Oklahoma.

On August 4, 1982, respondent filed a cross-complaint for custody, visitation and support, requesting joint legal custody of the children, with physical custody in him.

On August 13, 1982, respondent was charged with two counts of child abduction (Pen. Code, § 278) and two counts of false imprisonment (Pen. Code, § 236).[1] The charges were dismissed pursuant to respondent's section 995 motion, based upon the trial court's finding that respondent had a right to custody of the children. The People have appealed.

Penal Code section 278[2] criminalizes the taking, concealing or detaining of a child by one "not having a right of custody." Respondent's defense was that his right to custody of the children was at the time of the alleged crimes was coequal with that of their mother. ■ Civil Code section 197 provides that the father of a minor child is "equally entitled to the custody, services and earnings" of the child *"if presumed to be the father* under subdivision (a) of Section 7004."[3] (Italics added.) The People contend that *respondent does not qualify as a person* "presumed to be the father under subdivision (a) of Section 7004," and thus had no right to custody of the children when he took them from their mother.

---

[1] A stipulation and order filed on October 8, 1982, established custody in Twila with reasonable visitation rights to respondent.

[2] Penal Code section 278 provided at the applicable time: "(a) Every person, not having a right of custody, who maliciously takes, entices away, detains or conceals any minor child with intent to detain or conceal such child from a parent, or guardian, or other person having the lawful charge of such child shall be punished by imprisonment in the state prison for two, three or four years, a fine of not more than ten thousand dollars ($10,000), or both, or imprisonment in a county jail for a period of not more than one year, a fine of not more than one thousand dollars ($1,000), or both.

"(b) A child who has been detained or concealed in violation of subdivision (a) shall be returned to the person having lawful charge of the child. Any expenses incurred in returning the child shall be reimbursed as provided in Section 4605 of the Civil Code. Such costs shall be assessed against any defendant convicted of a violation of this section."

[3] In full, section 197 states: "The mother of an unmarried minor child is entitled to its custody, services and earnings. The father of the child, if presumed to be the father under subdivision (a) of Section 7004, is equally entitled to the custody, services and earnings of the unmarried minor. If either the father or mother be dead or unable or refuse to take the custody or has abandoned his or her family, the other is entitled to its custody, services and earnings."

The Uniform Parentage Act (hereinafter Act) (Civ. Code, § 7000 et seq.) sets forth, in subdivision (a)(4) of section 7004 of the Civil Code, rebuttable presumptions which apply where the identity of the "natural father" of a child is at issue. As pertinent here, it provides that "A man is presumed to be the natural father of a child if . . . [h]e receives the child into his home and openly holds out the child as his natural child."

It is undisputed that respondent received the children into his home, which he shared with Twila, and in all respects treated them as his own. But the Attorney General nevertheless insists that respondent did not have equal rights of custody under section 197 because no prior determination of a father-child relationship had been made pursuant to the Act. The Attorney General's position is that a person cannot be "presumed to be a father under subdivision (a) of Section 7004" (within the meaning of Civ. Code, § 197, and in order to determine the right to custody for purposes of Pen. Code, § 278), until the existence of a father-child relationship has been determined in a *legal proceeding*. No such proceeding was ever brought, either by respondent or any other proper party designated by Civil Code section 7006.

We find the Attorney General's position to be inconsistent with the purposes of the Act, which includes section 7004, and was patently enacted to protect and expand the rights and promote the relationship of both putative parents and illegitimate children.

The Act eliminates references to legitimacy and illegitimacy, and instead refers only to the "parent and child relationship" (Civ. Code, § 7001), which is defined as the "legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations." (*Ibid.*) And in the Act the Legislature affirmed that "[t]he parent and child relationship extends equally to every child and to every parent regardless of the marital status of the parents." (Civ. Code, § 7002.)

Thus, the Act—including section 7004—was plainly intended to establish and promote the rights of putative fathers, and to remove obstacles to the maintenance of parental relations for the benefit of "illegitimate" children. And section 197 does not specify that *only* those parties who have by judicial decree achieved formal status as a parent (cf. § 7006) are entitled to custody. Rather, it grants equal custodial rights to anyone "presumed to be a father under section 7004," thereby indicating that the substance of the relationship—spousal and filial—rather than prior judicial adjudication shall have precedence. Finally, respondent is concededly the natural father of the children, and resorting to section 7004 to establish paternity is therefore superfluous. (*In re Tricia M.* (1977) 74 Cal.App.3d 125, 132 [141 Cal.Rptr.

554].) We accordingly conclude that for purposes of section 197, respondent is a presumptive father with equal right to custody of the children, despite the lack of a prior judicial determination of his status.

Next, the People contend that issuance of a temporary court order awarding custody of the children to Twila deprived respondent of his "right of custody," thus subjecting him to prosecution under Penal Code section 278. But Twila's failure to serve the custody order on respondent defeats this claim, for, just as the mere filing of a complaint without service of summons confers no jurisdiction, the rendition of the court order did not ipso facto deprive respondent of his custodial right. (*Cline* v. *Superior Court* (1982) 135 Cal.App.3d 943, 947 [185 Cal.Rptr. 787].) Rather, service of the order was a prerequisite to termination of his otherwise undoubted custodial rights. (*Ibid.*) Absent actual knowledge nothing less would satisfy fundamental requirements of due process. (*In re La Opinion* (1970) 10 Cal.App.3d 1012, 1019 [89 Cal.Rptr. 404].)

In sum, since respondent was abstractly entitled to custody of the children at the time he absconded with them, the prosecution failed to establish an element critical to the charge under section 278, namely, that respondent had no such right.

The People alternatively argue that section 278 is a "strict liability crime,"[4] making respondent's ignorance of the trial court's order irrelevant to the charge. Reliance is placed by the Attorney General upon our high court's decision in *People* v. *Snyder* (1982) 32 Cal.3d 590 [186 Cal.Rptr. 485, 652 P.2d 42], where evidence of defendant's mistaken belief that she was previously convicted of only a misdemeanor was found properly excluded in a prosecution for possession of a firearm by a felon (Pen. Code, § 12021). Noting the distinction between "mistakes of fact and mistakes of law," and that only the former negate criminal intent under Penal Code section 26 (*id.*, at p. 593), and concluded that: "[Defendant's] asserted mistake regarding her correct legal status was a mistake of law, not fact. It does not constitute a defense to section 12021." (*Ibid.*)

The present case is readily distinguishable from *Snyder.* Penal Code sections 278 and 278.5 defined specific intent crimes: Section 278 provided that abduction of the child must be "with intent to detain or conceal such child from a parent"; section 278.5 similarly states that violation of a child custody decree is criminal if the child is detained or concealed "with the intent to deprive the other person of such right to custody or visitation . . . ." In contrast, in *People* v. *Snyder, supra,* section 12021 was a general

---

[4]Assuming the very debatable existence of such "crimes."

intent crime, requiring merely an intent to commit the proscribed act. Also, in the case at bench, respondent was acting under a belief—mistaken or not—that he had never been deprived of his custodial right to the children. The *fact* of the custody order—rather than its legal effect—was unknown to him. His mistaken belief negates not only the requisite intent to deprive Twila of custody, but also discloses his lack of awareness that his conduct was proscribed by section 278.

Penal Code section 26 provides that a person does not commit a crime when the act was committed under a mistake of fact "which disproves any criminal intent." Section 20[5] adds: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." (See *People* v. *Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468].) ▮ " 'So basic is this requirement [of a union of act and wrongful intent] that it is an invariable element of every crime unless excluded expressly or by necessary implication.' " (*People* v. *Mayberry* (1975) 15 Cal.3d 143, 154 [125 Cal.Rptr. 745, 542 P.2d 1337]; *People* v. *Vogel* (1956) 46 Cal.2d 798, 801 [299 P.2d 850].)

Recent appellate decisions manifest a refusal to impose criminal sanctions absent a showing of intent. In *People* v. *Hernandez* (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092], for example, the court found it a defense to the charge of statutory rape that the defendant had honestly and reasonably believed the prosecutrix was over 18 years of age. (Pen. Code, § 261.) Similarly, in *People* v. *Mayberry, supra,* 15 Cal.3d 143, the court considered defendant's mistaken belief of consent to be a valid defense to charges of forcible rape and kidnaping, explaining: "If a defendant entertains a reasonable and bona fide belief that a prosecutrix voluntarily consented to accompany him and to engage in sexual intercourse, it is apparent he does not possess the wrongful intent that is a prerequisite under Penal Code section 20 to a conviction of kidnaping (§ 207) or rape by means of force or threat (§ 261, subds. 2 and 3)." (*Id.,* at p. 155.)[6]

Even more closely in point here is *People* v. *Vogel, supra,* 46 Cal.2d 798, where defendant's reasonable but erroneous belief that his first wife

---

[5]While other minds may wonder whether the holding in *People* v. *Snyder, supra,* 32 Cal.3d 590 is consonant with the commands of Penal Code sections 26 and 20, we are of course bound by the rule announced therein.

[6]See also *People* v. *Atchison* (1978) 22 Cal.3d 181, 183 [148 Cal.Rptr. 881, 583 P.2d 735], where it was held that a reasonable and honest belief that the victim was 19 years of age was a defense to a charge of annoying or molesting a child under age 18 and contributing to the delinquency of a minor. (But see *Burg* v. *Municipal Court* (1983) 35 Cal.3d 257 [198 Cal.Rptr. 145, 673 P.2d 732].)

had divorced him negated the criminal intent necessary to support a conviction for bigamy. Noting that the intent requirement of section 20 was not excluded expressly or by necessary implication (*id.,* at p. 801), the court declared: "Nor would it be reasonable to hold that a person is guilty of bigamy who remarries in good faith in reliance on a judgment of divorce or annulment that is subsequently found not to be the 'judgment of a competent court' (Pen. Code, § 282), particularly when such judgment is obtained by the former husband or wife of such person in any one of the numerous jurisdictions in which such judgments can be obtained. Since it is often difficult for laymen to know when a judgment is not that of a competent court, we cannot reasonably expect them always to have such knowledge and make them criminals if their bona fide belief proves to be erroneous." (*Id.,* at p. 804.)

In the case at bench, respondent was not mistaken about the terms of interpretation of the penal statute which he is charged with violating; the issue is therefore not a mere mistake of law as in *People* v. *Snyder, supra,* 32 Cal.3d 590. Instead, as in *People* v. *Vogel, supra,* 46 Cal.2d 798, he was unaware of the *existence* of a court order, which negates the specific intent required to establish the crime.

The false imprisonment charge suffers from the same infirmity, and falls with the kidnaping charge. (*People* v. *Oliver* (1961) 55 Cal.2d 761, 768 [12 Cal.Rptr. 865, 361 P.2d 593]; *Cline* v. *Superior Court, supra,* 135 Cal.App.3d 943, 948-949.) We conclude that all counts were properly dismissed.

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 19, 1984.