[No. A024211. First Dist., Div. Two. Dec. 12, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR MANUEL CARRILLO et al., Defendants and Appellants.

COUNSEL

David Goyne, under appointment by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Thomas A. Brady and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KLINE, P. J.—Defendants and appellants Victor Manuel Carrillo and Margaret Suzanne Carrillo, husband and wife, appeal their conviction of child stealing. (Pen. Code, § 278.)[1]

The issue they present is whether Penal Code section 278 and Civil Code section 197, as applied, constitute gender-based discrimination depriving an unwed father of equal protection of the laws under the California and federal Constitutions.

FACTS

Alexandra M. is the mother of a girl, born December 31, 1981. Alexandra believed that appellant Victor Carrillo was the father of her child and through the district attorney's office initiated an action intended to name him as the father. After informing Victor that she was pregnant and thought him to be the child's father, she did not see him for the remainder of her pregnancy. She next saw Victor on July 18, 1982, when he took a court-ordered blood test. Victor testified that he was not informed of Alexandra's pregnancy and was unaware of the existence of the child until he received papers from the court demanding support. Victor first saw the infant on July 18, 1982, when his blood sample was obtained. Test results showed a 99.94 percent likelihood that Victor was the father of the child. Prior to the results of the blood test and prior to trial Victor denied paternity. At trial, however, he changed his position and admitted paternity.

Alexandra M. testified that around the time the results of the blood test were received, appellants approached her in the parking lot of her apartment complex stating they had a court order to see the baby and wanted to take

---

[1]Appellant Victor Carrillo was granted probation on condition that he serve 90 days in the county jail. Appellant Margaret Carrillo was granted probation on condition that she perform 120 hours of community service.

her. Alexandra refused to give them the child. Approximately a week later Victor came to Alexandra's house and told her that his wife, appellant Margaret Carrillo, had thrown him out and that he intended to obtain a divorce. Alexandra and Victor agreed to an outing the next day, Sunday, to discuss custody of the child. Victor arrived on Sunday telling Alexandra that friends had brought him because his car had broken down. They went for pizza in Alexandra's car. After they entered the restaurant Victor held the child and gave Alexandra money to purchase food. While Alexandra was at the cashier, Victor took the child from the restaurant and ran to an awaiting station wagon. Margaret Carrillo was seated in the passenger seat and the motor was running. Victor, followed by Alexandra, pushed the baby into the car, knocking Alexandra to the ground as she tried to hold the door. Alexandra ran to her car in the parking lot to pursue them, but found that two of the tires had been slashed. She called the police but did not see her child again until April 30, 1983, approximately six months later, when she picked her up from a child protective services home in El Centro. Appellants had taken the infant to Mexico.

### DISCUSSION

Appellants contend on appeal that Penal Code section 278 is unconstitutional as applied. In essence, they attack not section 278, which is gender neutral on its face, but Civil Code section 197, which differentiates between unwed parents with regard to their respective rights to custody where, as here, the father is not a "presumed father." (Civ. Code, § 7004.)

Under California law, absent court order, both a natural mother and a man presumed to be the natural father of a child pursuant to Civil Code section 7004[2] are entitled to the custody, services and earnings of an unmarried minor. (Civ. Code, § 197.)[3] Penal Code section 278, which defines the offense of which appellants were convicted, criminalizes the act of maliciously taking, enticing away, detaining, or concealing a child from the person having lawful charge of that child by a person, "not having a right of custody."[4] The California Supreme Court has made clear, however, that

---

[2]Civil Code section 7004 is set forth, *post,* at footnote 6.

[3]Civil Code section 197 provides: "The mother of an unmarried minor child is entitled to its custody, services and earnings. The father of the child, if presumed to be the father under subdivision (a) of the Section 7004, is equally entitled to the custody, services and earnings of the unmarried minor. If either the father or mother be dead or unable or refuse to take the custody or has abandoned his or her family, the other is entitled to its custody, services and earnings."

[4]Penal Code section 278, subdivision (a) provides: "Every person not having a right of custody, who maliciously takes, entices away, detains or conceals any minor child with intent to detain or conceal such child from a person, guardian, or public agency having the lawful charge of such child shall be punished by imprisonment in the state prison for two, three, or four years, a fine of not more than ten thousand dollars ($10,000), or both, or imprisonment in a county jail for a period of not more than one year, a fine of not more than one thousand dollars ($1,000), or both."

in the absence of an order or decree affecting custody, a parent with the right of custody does not commit child stealing by taking exclusive possession of the child. (See *Wilborn* v. *Superior Court* (1959) 51 Cal.2d 828, 830-831 [337 P.2d 65]; *Cline* v. *Superior Court* (1982) 135 Cal.App.3d 943, 947 [185 Cal.Rptr. 787]; *People* v. *Johnson* (1984) 151 Cal.App.3d 1021 [199 Cal.Rptr. 231].) In *Cline, supra,* and *Johnson, supra,* presumed fathers were held not to have violated Penal Code section 278 by taking sole physical custody of the child and removing the child from the state. In *Johnson, supra,* the court extended this defense to a "natural father" who also qualified under Civil Code section 7004 as a "presumed father," rejecting the Attorney General's argument that a person could not be " 'presumed to be a father under subdivision (a) of section 7004' " (within the meaning of Civ. Code, § 197, and in order to determine existence of the right to custody referred to in Pen. Code, § 278), until the existence of a father-child relationship had been determined in a legal proceeding, such as that provided by Civil Code section 7006. (*Id.,* at p. 1025.)[5]

The court below found that Victor Carrillo was not a presumed father under Civil Code section 7004.[6] Consequently, the court concluded, he had

---

[5]*Cline* v. *Superior Court, supra,* 135 Cal.App.3d 943 and *People* v. *Johnson, supra,* 151 Cal.App.3d 1021, both involved fathers who qualified as presumed fathers under Civil Code section 197, and were thus immune from prosecution for child stealing under Penal Code section 278. In *Johnson,* after concluding that the defendant was a presumed father under section 7004 despite the lack of a prior formal adjudication of that status, the court added a somewhat cryptic comment that defendant "is concededly the natural father of the children, and resorting to section 7004 to establish paternity is therefore superfluous." (*Id.,* at p. 1025, citing *In re Tricia M.* (1977) 74 Cal.App.3d 125, 132 [141 Cal.Rptr. 554].)

*In re Tricia M.* recognizes at the cited page that natural parentage may be established without resort to any presumption of Civil Code section 7004. This is undoubtedly true. Nevertheless, *Tricia M.* proceeds to point out that although the parties may agree as to the identity of the natural father and need not, therefore, resort to a presumption to establish parenthood, "[t]he Act, however, makes a distinction between 'natural father' and 'presumed father' for other purposes. These are words of art and must be differentiated particularly in adoption cases under section 7017." The court then discusses the relative rights of presumed fathers and nonpresumed natural fathers, recognizing that the rights of the latter are more limited than those of the former. (See, *id.,* at pp. 132-133.)

Under Civil Code section 197, only a presumed father has rights to custody equivalent to those of a natural mother. The presumption of section 7004 serves not merely to establish one as a natural father, but when read together with section 197 identifies those persons entitled to custody.

To the extent that the dicta in *Johnson* just quoted indicates that a nonpresumed natural father would have an equivalent right to custody and immunity from prosecution with a presumed father, we believe it is incorrect and decline to follow it.

[6]Civil Code section 7004 provides: "(a) A man is presumed to be the natural father of a child if he meets the conditions as set forth in Section 621 of the Evidence Code or in any of the following subdivisions: [¶] (1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court. [¶] (2) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in

no right to custody and therefore could be prosecuted under section 278, as he was.

Appellants contend that Penal Code section 278 is unconstitutional as applied in this case as a "natural mother" (who because of her status as such has a right to custody under Civ. Code, § 197) could not be convicted whereas a "natural father" who is not also a "presumed father" entitled to custody under Civil Code section 197 would not have such immunity.

## I.

Before addressing appellant Victor Carrillo's contention we first address the collateral contention of appellant Margaret Carrillo, which can be disposed of briefly. ■ She claims that if, due to the unconstitutionality of Penal Code section 278 as applied, Victor has a good defense to the charge, the statute is similarly unenforceable against her. We reject this claim.

In *Wilborn v. Superior Court, supra,* 51 Cal.2d 828, 830, the California Supreme Court explicitly adopted what it identified as the "minority view" holding that "whatever may be the right of one parent, in the absence of an order for child custody, to invade the possession of the other to take or entice away their mutual offspring, such right may not be delegated to an agent. To hold otherwise would result in untold confusion and provoke many possible breaches of the peace in that the parent having possession of the child would be at the mercy of persons acting as alleged agents of the other parent and claiming immunity from prosecution under the statute because of the personal right of their principal. [Citation.] Such consequences would not promote the interests of the parents, the child or the public welfare." (*Id.,* at p. 831.) This authority has never been overruled in this state and it is binding upon this court. Therefore, whatever the merits of Victor's

---

apparent compliance with law, although the attempted marriage is or could be declared invalid, and, [¶] (i) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce; or [¶] (ii) If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation. [¶] (3) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and [¶] (i) With his consent, he is named as the child's father on the child's birth certificate, or [¶] (ii) He is obligated to support the child under a written voluntary promise or by court order. [¶] (4) He receives the child into his home and openly holds out the child as his natural child.

"(b) Except as provided in Section 621 of the Evidence Code, a presumption under this section is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence. If two or more presumptions arise under this section which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court decree establishing paternity of the child by another man."

claim, Margaret Carrillo was properly convicted for her actions in this case. (See also *Rosefield* v. *Rosefield* (1963) 221 Cal.App.2d 431, 434 [34 Cal.Rptr. 479].)

## II.

■■■ The central issue in this case is whether the statutory distinction in Civil Code section 197 between the child's mother and the biological father who is not also the legally presumed father satisfies the requirements of equal protection under the federal and California Constitutions.

Before commencing our analysis, it is useful to note the context in which the present version of the statute in issue was enacted. Civil Code section 197 was amended in 1975 when California adopted many provisions of the Uniform Parentage Act.[7] In keeping with the Legislature's new focus upon the primacy of the parent-child relationship, the amendment not only deleted references to "legitimate" and "illegitimate" minors but in certain particulars enhanced the rights of unmarried fathers. For example, prior to the 1975 amendment both parents were required to provide support for the child[8] but the unwed mother was exclusively entitled to the child's custody, services and earnings.[9] In 1976, when it enacted Penal Code sections 278 and 278.5,[10] the Legislature deleted language providing that "even in the

---

[7]Civil Code sections 7000-7018 (Stats. 1975, ch. 1244, § 11, eff. Jan. 1, 1976).

[8]Former Civil Code section 196a provided: "The father as well as the mother of an illegitimate child must give him support and education suitable to his circumstances. A civil suit to enforce such obligations may be maintained in behalf of a minor illegitimate child by his mother or guardian, or by a guardian ad litem appointed upon the written application or with the consent of his mother; provided, that such application or consent shall not be necessary if the mother is dead or incompetent, and in such action the court shall have power to order and enforce performance thereof, the same as is the case with respect to legitimate children, in a suit for dissolution of marriage by a wife."

[9]Former Civil Code section 200 (repealed by Stats. 1975, ch. 1244, § 4) read: "The mother of an illegitimate unmarried minor is entitled to its custody, services and earnings."

[10]Penal Code section 278.5 fills a necessary gap in the child abduction statutes, for where there is an existing custody order or decree, not even a person entitled to custody may abduct the child in violation of that order or in derogation of the rights of another to physical custody or visitation. Penal Code section 278.5 provides:

"(a) Every person who in violation of the physical custody or visitation provisions of a custody order, judgment or decree takes, retains, detains, or conceals the child with the intent to deprive another person of his or her rights to physical custody or visitation shall be punished by imprisonment . . . .

"(b) Every person who, whether within or without this state, causes a child to be transported out of this state with the intent to deprive another of his or her rights to physical custody or visitation in violation of the physical custody or visitation provisions of a custody order, judgment or decree, shall be punished by imprisonment . . . .

"(c) Every person who has a right to physical custody of or visitation with a child pursuant to an order, judgment or decree of any court which grants another person, guardian or public agency right to physical custody of or visitation with that child, and who within or without the state detains, conceals, takes or entices away that child with the intent to deprive the other person of such right to custody or visitation shall be punished . . . ."

absence of a court order, if a person with a right to custody detained or concealed a child without good cause and with an intent to deprive the other person of such rights, misdemeanor penalties could be imposed. (See the Leg. Counsel's Dig. of Assem. Bill No. 2549, 4 Stats. 1976 (Reg. Sess.) Summary Dig., pp. 406-407.)" (*Cline* v. *Superior Court, supra,* 135 Cal.App.3d 943, 947, fn. 2.)

Despite the foregoing legislative endeavors to diminish disparities between the custodial rights of unmarried parents, appellant Victor Carrillo contends that the disparity that remains in Civil Code section 197 deprives him of equal protection of the laws.

The rights of unwed fathers have continued to evolve since they were first given wide recognition by the United States Supreme Court in *Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208]. Prior to *Stanley* the father of a child born out of wedlock enjoyed no unconditional rights in the child. (*Cheryl H.* v. *Superior Court* (1974) 41 Cal.App.3d 273, 277 [115 Cal.Rptr. 849], disapproved on other grounds in *In re Richard M.* (1975) 14 Cal.3d 783, 798 [122 Cal.Rptr. 531, 537 P.2d 363]; *Adoption of Rebecca B.* (1977) 68 Cal.App.3d 193, 196 [137 Cal.Rptr. 100].) "In *Stanley,* the court held violative of equal protection and due process rights an Illinois statute which, upon the death of an unwed mother, made her children wards of the state without according to the father the right to be heard. The father in that case had physical custody of the children when the mother died. Nonetheless, in analyzing the *Stanley* decision, our state Supreme Court observed that 'the court purported to go beyond the precise facts of that case and held that the state was required to afford a hearing to all unwed fathers who desire and claim that they are fit to care for their children *when the mother cannot or will not provide that care.* ([*Stanley* v. *Illinois*], at p. 657, fn. 9 [31 L.Ed.2d at p. 562]; [citations].) The court premised its holding on "rights to conceive and to raise one's children," and held that such rights could not be taken from a father of a child born to a woman to whom he was not wed by operation of a statutory presumption of the father's unfitness. [¶] In broad terms *Stanley* states that the interest of an unwed father in his children is not only cognizable but also of sufficient substance to warrant deference except when the deprivation comports with equal protection and due process requirements.' (Fn. omitted; italics added; *In re Lisa R.* (1975) 13 Cal.3d 636, 647-648 . . . .)" (*Adoption of Rebecca B.* (1977) 68 Cal.App.3d 193, 196-197 [137 Cal.Rptr. 100].)

In California, as earlier indicated, unwed fathers are divided into two categories—"alleged natural fathers" and "presumed natural fathers"—each with different rights in the child. A "presumed natural father" is defined by section 7004, subdivision (a). Generally, he is one who is married

to the mother at the time of birth or conception, or attempted to get married at one of those times, or after the birth of the child married or attempted to marry and he was named father on the birth certificate or is legally obligated to support the child as a father, or has received the child into his home and openly holds the child out as his own natural child.

"Under section 197, both mothers and presumed fathers are *entitled* to custody of their minor children. An adoption can proceed *only* if their consent has been given or their parental rights have been terminated pursuant to a section 232 or section 224 hearing. The mother and presumed father are equally entitled to the child's custody; therefore his consent is necessary before the child may be adopted.

"However, if the father is merely a natural father and not a presumed father, the mother alone is entitled to the child's custody. *Only when the natural mother relinquishes the child for adoption* do the natural father's rights commence. (§ 7017, subd. (d).) He is to be notified and his custodial rights, if claimed, determined before the adoption can proceed. [Fns. omitted.]" (*In re Baby Girl M.* (1984) 37 Cal.3d 65, 71-72 [207 Cal.Rptr. 309, 688 P.2d 918], original italics.) The legal distinction between a presumed natural father and a merely alleged natural father is founded on sound public policy. (*W. E. J.* v. *Superior Court* (1979) 100 Cal.App.3d 303, 308-310 [160 Cal.Rptr. 862]; see also Bodenheimer, *New Trends and Requirements in Adoption Law and Proposals for Legislative Change* (1975) 49 So.Cal.L.Rev. 10, 57-62.)

Since appellant Victor Carrillo is merely the alleged natural father of the child and not her presumed natural father, it is clear that Civil Code section 197 operates to deprive him of custody rights in the child commensurate with those accorded the mother.

Whether this deprivation offends the requirements of equal protection depends, as a preliminary matter, upon whether the mother and alleged natural father are similarly situated. ■ "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549], italics in original.) Under the equal protection clause of the Fourteenth Amendment, "[a] classification 'must be reasonable, not arbitrary, and must rest on some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons *similarly circumstanced* shall be treated alike.'" (*Reed* v. *Reed* (1971) 404 U.S. 71, 76 [30 L.Ed.2d 225, 229, 92 S.Ct. 251], italics added.)

Cases discussing limitations upon the rights of natural fathers relative to those of mothers arise primarily in the adoption context. In these cases, the validity of the natural father's claim that he was unconstitutionally deprived of equal protection of the laws have been seen to hinge on whether the two parents were in fact similarly situated with respect to the child; or, stated differently, whether the statute in question limited the rights of the natural father vis-à-vis those of the mother regardless whether he had established significant custodial, personal or financial relationships with the child rendering him similarly situated with (or better situated than) the mother.

In *Lehr* v. *Robertson* (1983) 463 U.S. 248 [77 L.Ed.2d 614, 103 S.Ct. 2985], the United States Supreme Court held that the natural father's rights under the due process and equal protection clauses were not violated by the failure of a New York statute to require notice and an opportunity to be heard before his child was adopted, as the father had never had any significant custodial, personal, or financial relationship with the child. Addressing specifically the natural father's equal protection claim, the court recognized that the New York legislation guarantees "to certain people the right to veto an adoption and the right to prior notice of any adoption proceeding. The mother of an illegitimate child is always within that favored class, but only certain putative fathers are included." The court emphasized that the "existence or nonexistence of a substantial relationship between parent and child is a relevant criterion in evaluating both the rights of the parent and the best interests of the child." The court explained, "In *Quilloin* v. *Walcott, supra,* [1978 (434 U.S. 246 (54 L.Ed.2d 511, 98 S.Ct. 549))] we noted that the putative father, like appellant, 'ha[d] never shouldered any significant responsibility with respect to the daily supervision, education, protection, or care of the child. Appellant does not complain of his exemption from these responsibilities . . .' 434 U.S., at 256 . . . . We therefore found that a Georgia statute that always required a mother's consent to the adoption of a child born out of wedlock, but required the father's consent only if he had legitimated the child, did not violate the Equal Protection Clause. Because, like the father in *Quilloin,* appellant has never established a substantial relationship with his daughter, . . . the New York statutes at issue in this case did not operate to deny appellant equal protection. [¶] We have held that these statutes may not constitutionally be applied in that class of cases where the mother and father *are in fact similarly situated with regard to their relationship with the child.* In *Caban* v. *Mohammed,* 441 U.S. 380, . . . (1979), the Court held that it violated the Equal Protection Clause to grant the mother a veto over the adoption of a four-year-old girl and a six-year-old boy, but not to grant a veto to their father, who had admitted paternity and had participated in the rearing of the children. The Court made it clear, however, that if the father had not 'come forward to participate in the rearing of his child, nothing in the Equal Protection Clause

[would] preclude [] the State from withholding from him the privilege of vetoing the adoption of that child.' 441 U.S., at 392 . . . ." (*Lehr* v. *Robertson, supra,* 463 U.S. at p. 267 [77 L.Ed.2d at p. 630], italics added.)

Unlike the situation in *Caban* v. *Mohammed* (1979) 441 U.S. 380 [60 L.Ed.2d 297, 99 S.Ct. 1760], the father in *Lehr* never established any custodial, personal, or financial relationship with his child; and this factor was crucial to the decision to uphold the statute. As stated in *Lehr,* "If one parent has an established custodial relationship with the child and the other parent has either abandoned or never established such a relationship, the Equal Protection Clause does not prevent a state from according the two parents different legal rights." (463 U.S. at p. 267 [77 L.Ed.2d at p. 630], fns. omitted.)[11]

Thus, where an unwed father has not sought, either through legal means such as those available under Civil Code section 7006[12] or otherwise, to initiate a parent-child relationship, the equal protection clause of the federal Constitution will not be violated by the application of a statute which grants such a father lesser rights than are accorded the mother. It is noteworthy, in this connection, that the biological father whose equal protection argu-

---

[11]It deserves note that the court in *Caban* rejected the mother's assertion that the distinction between unmarried mothers and unmarried fathers was justified by a fundamental difference between maternal and paternal relations—that "'a natural mother, absent special circumstances, bears a closer relationship with her child . . . than a father does.'" (*Id.,* at p. 388 [60 L.Ed.2d at p. 305].) The court pointed out that the unwed father had a relationship with his children fully comparable to that of the mother. The *Caban* court also rejected the argument that the distinction between unwed fathers and unwed mothers was substantially related to the state's interest in promoting the adoption of illegitimate children. (*Id.,* at p. 389, 391 [60 L.Ed.2d at pp. 305, 306].) However, the court did recognize that "[i]n those cases where the father never has come forward to participate in the rearing of his child, nothing in the Equal Protection Clause precludes the State from withholding from him the privilege of vetoing the adoption of that child." (*Id.,* at p. 392 [60 L.Ed.2d at p. 307].)

In *Quilloin* v. *Walcott, supra,* 434 U.S. 246, the Supreme Court held that equal protection principles did not require that the unwed father's authority to veto an adoption be measured by the same standard as applied to a divorced father, from whose interest the unmarried father's interests were readily distinguishable. (*Id.,* at p. 256 [54 L.Ed.2d at p. 520].) However, in a footnote, the court pointed out that it was not considering appellant's untimely claim that the statutes at issue made gender-based distinctions that violated the equal protection clause. Rather, it considered only the question as to whether the interests of a married father who was separated or divorced from the mother and no longer living with the child were distinguishable from those of an unmarried father.

[12]Civil Code section 7006 provides in pertinent part: "(c) An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under Section 7004 or whose presumed father is deceased may be brought by . . . a man alleged or alleging himself to be the father, or the personal representative or a parent of the alleged father if the alleged father has died or is a minor. The commencement of such an action shall suspend any pending proceeding in connection with the adoption of such child, including a proceeding pursuant to subdivision (b) of Section 7017, until a judgment in the action is final."

ment was rejected in *Lehr* had considerably greater contact with the mother and child than did appellant in this case. He had cohabited with the mother for two years, admitted paternity and visited mother and child in the hospital. He also employed a detective agency to assist him in locating mother and child after their whereabouts were concealed. (*Id.*, at p. 269 [77 L.Ed.2d at p. 631], dis. opn. of White, J.) Under these circumstances Mr. Lehr would probably have qualified under the California statute as a "presumed father."

California cases considering the civil statutes here at issue in the context of an unwed father's right to veto an adoption have generally held that the statutory scheme satisfies the requisites of equal protection and are in full compliance with *Stanley* v. *Illinois, supra,* 405 U.S. 645, as they allow an alleged natural father to attempt to establish the existence of a relationship pursuant to Civil Code section 7006 and an opportunity to qualify as a presumed father under Civil Code section 7004.[13] (See, e.g., *In re Tricia M., supra,* 74 Cal.App.3d 125, 132-135; *Adoption of Rebecca B., supra,* 68 Cal.App.3d 193, 198 [145 Cal.Rptr. 122].) In *Adoption of Marie R.* (1978) 79 Cal.App.3d 624, 629 [145 Cal.Rptr. 122], the Court of Appeal relied upon *Quilloin* v. *Walcott, supra,* 434 U.S. 246, to hold that the Legislature may validly draw the distinction between a presumed natural father and a merely alleged natural father. And in *In re Baby Girl M., supra,* 37 Cal.3d 65, the court recognized that in making this distinction "[t]he Legislature intended to differentiate between the veto powers accorded unwed mothers and presumed fathers on the one hand and natural fathers on the other." (*In re Baby Girl M., supra,* 37 Cal.3d at p. 72; accord: *W. E. J.* v. *Superior Court, supra,* 100 Cal.App.3d 303, 314; *In re Tricia M., supra,* 74 Cal.App.3d 125, 134.)

Perhaps the clearest statement of California authority to the effect that natural mothers and nonpresumed fathers are not similarly situated for purposes similar to that of Civil Code section 197 appears in *W. E. J.* v. *Superior Court, supra,* 100 Cal.App.3d 303, where, over a vigorous dissent by Justice Jefferson, the majority held that "although the biological father

---

[13]In *Adoption of Rebecca B., supra,* 68 Cal.App.3d 193, 198, fn. 4, the court discussed the statutory scheme as follows: "Under the Uniform Parentage Act (§ 7000 et seq.; Stats. 1975, ch. 1244, § 11, eff. Jan. 1, 1976), a man not the presumed father of a child under section 7004, subdivision (a), but alleging himself to be the father, may bring an action to determine the existence of the father and child relationship (§ 7006, subd. (c)). The resulting judgment or order of court may make provision for any matter in the best interests of the child including support, custody, guardianship and visitation privileges (§ 7010, subd. (c)). *Thus the judgment may provide the opportunity for the alleged natural father to qualify as the presumed father under section 7004, subdivision (a)(4).* Section 7017 spells out the rights of a presumed father with respect to a child in the situation where the mother 'relinquishes or consents to or proposes to relinquish [the child] for adoption. . . .' " (Italics added.) (See also *In re Tricia M., supra,* 74 Cal.App.3d 125, 136.)

is entitled to be heard in opposition to the adoption proceedings, and to present his own qualification for custody, the adoption may be ordered without his consent as is provided in section 7017, subdivision (d), and section 224." (*Id.,* at p. 305.) The court found that the classification between natural fathers and presumed fathers referred to in section 7004 "reflects the Legislature's resolution of a long-recognized tension between the best interests of the child and the personal desires of a male parent who has neither gone through a marriage ceremony with the mother nor shared a home with the child." (*Id.,* at p. 308.)

After an exhaustive discussion of then existing state and federal authority on the issue, the court in *W. E. J.* concluded: "The California statute which took effect in 1976 avoids the fault of discriminating between all unwed mothers and all unwed fathers [asserted to be the vice of the statute successfully challenged in *Caban* v. *Mohammed, supra,* 441 U.S. 380]. The statutory classification sets apart those biological fathers who have neither gone through an apparently valid marriage ceremony with the mother nor lived with the child as a parent." (*W. E. J.* v. *Superior Court, supra,* at p. 314.) Addressing itself specifically to the equal protection issue the court stated: "To the extent that this classification is based upon gender, it is based upon an actual difference in situation. Whatever else may be said of an unwed mother, she is not a stranger to her child. A gender-based classification is not improper where men and women are not similarly situated. (See *Schlesinger* v. *Ballard,* 419 U.S. 498 . . . .)" (*Id.,* at p. 315.) The court then proceeded to conclude that the limited classification provided in section 7017, subdivision (d), "does meet constitutional standards in that it relates to an important state interest and does not go substantially beyond the protection of that interest." (*Id.,* at p. 315.)[14]

A recent case in this area, *Adoption of Baby Boy D.* (1984) 159 Cal.App.3d 8 [205 Cal.Rptr. 361], held that due process and equal protection of the laws required that a natural father's rights not be terminated nor custody of his child awarded to a nonparent except upon a finding that it would be detrimental to the child to award custody to the natural parent.[15] More important for present purposes, however, the court rejected the contention that application of the "presumed father" classification established

---

[14]It is noteworthy that the court apparently utilized the standard for equal protection under the federal Constitution and did not address the compelling state interest test mandated under the California equal protection clause. However, such discussion was in fact made unnecessary by the court's prior determination that to the extent the classification was based on gender, mothers and biological fathers who are not presumed fathers are not similarly situated.

[15]This conclusion was also adopted by the California Supreme Court in the even more recent case of *In re Baby Girl M., supra,* 37 Cal.3d 65.

by Civil Code section 7004, subdivision (a), to determine the necessity for a father's consent (Civ. Code, § 7017, subd. (d)) in circumstances where the natural mother has prevented the natural father from qualifying as a statutory presumed father, was constitutionally impermissible as creating an overbroad gender-based discrimination. (*Id.*, at pp. 22-24.)[16] Thus, it appears that state interpretations of the California Constitution are consonant with United States Supreme Court interpretations of the federal Constitution in holding that, *in circumstances similar to those presented in this case,* nonpresumed natural fathers are not similarly situated with natural mothers and that the statutes according different rights to each are not unconstitutional as applied.

The statutes that comprise the Uniform Parentage Act, and other statutes referred to therein, as interpreted by the courts, do not contain any irrebuttable presumption or other provision which has the effect of categorically prohibiting a nonpresumed father from obtaining custody rights in his child. Indeed, as declared in *In re Baby Girl M., supra,* 37 Cal.3d 65 and *Adoption of Baby Boy D., supra,* 159 Cal.App.3d 8, such a father is entitled to the benefit of the parental preference doctrine. However, the general rule that a natural father's interest in his child warrants protection ceases to operate where that interest is arrayed against "a powerful countervailing interest, . . . ." (*Stanley* v. *Illinois, supra,* 405 U.S. at p. 651 [31 L.Ed.2d at p. 558].) There is such a countervailing interest in this case, and it seems to us perfectly obvious.

The father in this case, it must be remembered, is not challenging the Civil Code section 197 distinction between mothers and nonpresumed fa-

---

[16]Specifically, the court reasoned that when a "nonpresumed natural father claims custody to his child in opposition to petitioning adoptive parents, pursuant to section 7017, and the doctrine of parental preference is applied, the court must find that an award of custody to the father would be detrimental to the child and leaving custody with the prospective adoptive parents is in the child's best interests in order to terminate the natural father's rights and proceed with the adoption. [Citations.] Should the court fail to find detriment, the natural father will gain *pendente lite* custody of the child and a consequent voice in the child's future. Whether viewed as obviating the need for an adoption (*W. E. J.* v. *Superior Court, supra,* 100 Cal.App.3d 303, 311) or as providing the natural father with the opportunity to qualify as a presumed father under subdivision (a) of Civil Code section 7004 (*In re Tricia M., supra,* 74 Cal.App.3d 125, 136; see also *In re Reyna, supra,* 55 Cal.App.3d 288, 301 [126 Cal.Rptr. 138]), the father has gained all that he sought. [¶] Should the court find detriment, the father suffers no unconstitutional discrimination from subsequent termination of his parental rights, for he has demonstrated his incompetence to gain a further voice in his child's future. Under other circumstances, the ultimate result would be eligibility to free the child from his custody and control in any event. (Civ. Code, § 232, subd. (a)(7).) Accordingly, we hold that application of the parental preference doctrine to a nonpresumed natural father's claim of custody in a Civil Code section 7017 proceeding satisfies the requirements of constitutional validity noted in *Caban* v. *Mohammed, supra,* 441 U.S. 380.)" (*Adoption of Baby Boy D., supra,* at pp. 23-24.)

thers in the context of a civil proceeding to obtain legal custody of his child. Rather, he makes his constitutional claim as a defense to a criminal charge of child stealing. It is in *his* interest, not that of the child, that he does so. Victor Carrillo has never sought legal custody of his daughter, and has never taken any steps whatever to establish paternity, secure visitation or provide financial assistance. Indeed, when the mother initiated an action to name him as the infant's father, he *denied* paternity. Nor can it be said in this case that the mother at any time endeavored to obstruct the establishment of a relationship between the father and his child. Manifestly, appellant is poorly positioned to challenged the limitation upon a right he has never evinced the least interest in genuinely exercising and has, until now, consistently eschewed.

As in *Lehr* v. *Robertson, supra,* 463 U.S. 248, 260 [77 L.Ed.2d 614, 626, we conclude that due to the entirely different nature of their respective relationships with the child, the natural mother and the nonpresumed natural father are not similarly situated. The mother in this case continued the care and nurturing of the child following her birth; the father, on the other hand, provided none of the care and support associated with parenting. " '*Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring.*' " (*Lehr* v. *Robertson, supra,* 463 U.S. 248, 260 [77 L.Ed.2d 614, 626], quoting *Caban* v. *Mohammed, supra,* 441 U.S. at p. 396 [60 L.Ed.2d at p. 310], dis. opn. of Stewart, J., italics in original.) Due to appellant's failure to establish any parental relationship with the child, we hold that the difference in the rights accorded by Civil Code section 197 to mothers and nonpresumed fathers does not infringe appellant Victor Carrillo's right to equal protection of the laws and that there is no constitutional reason he may not be prosecuted for violation of Penal Code section 278. Accordingly, the judgments are affirmed.

Rouse, J., and Smith, J., concurred.