[No. D018520. Fourth Dist., Div. One. Aug. 2, 1993.]

In re VANESSA W., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
GEISELLE C., Defendant and Appellant.

**[Opinion certified for partial publication.¹]**

¹Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, and III of the Discussion.

## COUNSEL

D. Curtis Webster, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Susan Strom and Patti L. Dikes, Deputy County Counsel, for Plaintiff and Respondent.

Lynne G. McGinnis, under appointment by the Court of Appeal, for Minor.

## OPINION

**TODD, Acting P. J.**—Geiselle C. appeals a judgment of the juvenile court terminating her parental rights under Welfare and Institutions Code[2] section 366.26 as to her minor daughter Vanessa W. Geiselle contends: (1) the court erred in finding she had not maintained frequent contact with Vanessa and continuing the relationship would not benefit Vanessa; (2) the court erred in failing to order visitation for Geiselle as part of Vanessa's permanent adoption plan; (3) section 366.26 violates due process by allowing termination of parental rights without a showing of parental unfitness; and (4) section 366.26 violates the constitutional guarantee of equal protection. We conclude none of these contentions has merit and accordingly affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 1991, San Diego County deputy sheriffs responded to a report of a disturbance at a motel in Lemon Grove where Geiselle and 15-month-old Vanessa were living. Geiselle appeared intoxicated and told the deputies she and her boyfriend had been fighting and she refused to allow him back into the room. Vanessa, who was wearing only a diaper, had bruises on her face and back and smelled of liquor. Vanessa was taken into protective custody.

On May 29, 1991, the San Diego County Department of Social Services (Department) filed a petition in the juvenile court on behalf of Vanessa alleging she had suffered and was at risk of suffering physical abuse by Geiselle, and Vanessa had been neglected because of Geiselle's alcohol abuse.[3] Vanessa's father, who was in prison, requested that the home of his aunt, Nicey B., be evaluated for detention of Vanessa.

The court found the allegations of the petition were true and declared Vanessa a dependent of the juvenile court. The court ordered Vanessa's physical custody removed from Geiselle, placed Vanessa in Nicey's home and ordered Geiselle to comply with a reunification plan, including submitting to drug testing, attending Alcoholics/Narcotics Anonymous meetings, participating in drug counseling and visiting Vanessa.

As of June 13, 1991, Geiselle had not visited Vanessa. Although one visit had been arranged, Geiselle telephoned the foster mother and said she was

---

[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3] The petition originally further alleged the parents' whereabouts were unknown. After both parents were located the juvenile court dismissed this allegation.

lost. When the foster mother offered to drive Vanessa to Geiselle's location, Geiselle declined because she thought a 15- to 20-minute visit would be too short and she also did not want to make her boyfriend late to pick up his car. According to a social study dated June 13, 1991, Geiselle seemed more bonded to her boyfriend than to Vanessa. Although Geiselle was testing negative for drugs, she had failed to take advantage of the recommended services to assist her in developing needed parenting skills.

As of June 20, 1991, Geiselle still had not visited Vanessa. According to a report dated July 15, 1991, Geiselle had missed four scheduled drug and alcohol tests and failed to return the social worker's telephone calls. A review report filed January 14, 1992, stated Geiselle was renting a one-bedroom apartment and was six months pregnant. She was unemployed but was receiving Aid to Families With Dependent Children benefits for herself and her unborn child. Geiselle had begun to make "infrequent" visits with Vanessa which were described as "pleasant and appropriate." According to the January 14 report as well as another report filed July 15, 1992, Vanessa was thriving in her placement with Nicey whom she referred to as "mama."

At the time of the July 15, 1992, report, Geiselle had moved from her previous address and failed to notify the Department of her new address. When a parent search found her new address, Geiselle failed to respond to letters mailed there. Although Geiselle had been referred to a parenting class, a Steps in Recovery program and Alcoholics Anonymous, she failed to attend any of these programs. The report noted: "Vanessa has continued to do well in the placement of her great aunt, Nicey. . . . Bonding to her aunt coupled with the household environment have all added to Vanessa's security and stability. This, in turn, has allowed Vanessa to [grow] and thrive despite the original issues of physical abuse, neglect, and abandonment. [¶] The parents, on the other hand, have done nothing to contribute to Vanessa's security or well-being. The mother, Geiselle [C.], has had no contact with her daughter in over six months. Additionally, despite resource referrals, [Geiselle] has failed to do anything on her reunification plan or even maintain contact with the Department of Social Services."

On July 30, 1992, the court terminated reunification services and ordered the matter referred for a selection and implementation hearing under section 366.26. At a contested hearing on February 17, 1993, the court received into evidence an assessment report dated November 23, 1992, and two additional information reports dated December 21, 1992, and February 17, 1993. The court heard the testimony of the social worker, Geiselle, and Vanessa's cousin Marlene W.

The November 23, 1992, assessment report stated Geiselle had visited Vanessa twice in 16 months: "During the first of these two visits on September 30, 1992, [Vanessa] clung to the Adoptions worker and cried. The response at the second visit, on October 14, 1992, was not much better. . . ." The report further indicated Vanessa was in excellent health and was happy and alert. Nicey, who is very committed to Vanessa, has expressed a desire to adopt her and would likely be approved for adoption. The Department recommended adoption as the most appropriate permanent plan for Vanessa.

According to the report of December 21, 1992, Geiselle visited Vanessa once between November 23 and December 21, 1992. There was a total of four visits from September 1992 through the date of the report. The social worker stated Vanessa seemed to view Geiselle as "another friend to play with" and "there does not seem to exist a parent-child relationship. Even though Vanessa knows we are going to visit her mother and she says that she is going to visit with her, I have to point her mother out to her when we arrive for the visit. During the last three visits, I have noticed that [Geiselle] seems to grow tired of playing with Vanessa near the end of the visit. Additionally, when the visit ends, [Geiselle] has to ask Vanessa for a goodbye kiss and hug. Vanessa doesn't display any separation anxiety, i.e., crying, holding onto [Geiselle], etc. Usual conversation on the way home centers around chewing gum, wanting a drink of water, and the song playing on the radio. If asked directly about the visit, Vanessa will say she "had fun."

According to the February 17, 1993, report, Geiselle visited Vanessa again on January 29, 1993, when she brought her son and her nephew. Vanessa and Geiselle interacted well although Vanessa did not initially go to Geiselle. "During the visit Vanessa spent some time sitting on the social worker's lap. [Vanessa] still goes to the worker and not [Geiselle] when she is unsure. This was evident when [Geiselle's] relatives came to pick her up. [Vanessa] ran to the social worker for protection. [Geiselle] had to go over to [Vanessa] and the social worker to say goodbye to Vanessa."

The adoptions social worker, Fred Wahlig, testified that in his opinion Vanessa was adoptable because of her age and developmental appropriateness. According to his review of the case file, Geiselle did not visit Vanessa for a seven-month period between January and July 1992. Between July and September 1992 there was one visit and from September through December 1992 there were four visits, for a total of five visits in 1992. Wahlig was present at four of the five visits. During the first visit, Vanessa was afraid of Geiselle and did not know who she was, and clung to Wahlig before going off to play. In Wahlig's opinion, no parent-child relationship existed between Geiselle and Vanessa in that Vanessa did not turn to Geiselle for

comfort, reassurance or safeguarding. Vanessa had no trouble separating from Geiselle and interacted with her more as a friend. She calls both Geiselle and Nicey "mama." Wahlig did not consider Geiselle's contact with Vanessa to be "regular." Although Wahlig recognized Geiselle had no way of telephoning Nicey, Geiselle did not send Vanessa cards or letters and did not arrange for more visits.[4] Wahlig set up every visit requested by Geiselle.

In Wahlig's opinion, it would not be detrimental to Vanessa to terminate Geiselle's parental rights because there was no parent-child relationship and Vanessa would not be affected. He has encouraged further visitation between Geiselle and Vanessa even after an adoption and Nicey has been open to this idea.

Geiselle testified that she would like to have an everyday mother/daughter relationship with Vanessa. During the seven-month period that she did not visit Vanessa, she was having a bad relationship with her son's father, who would not let her visit Vanessa and made her stay in the house. However, he is now in jail for domestic violence and out of her life.

Geiselle further testified Vanessa is not used to her yet and is obviously more bonded to Nicey. She had not requested more visitation because she had to wait for an appropriate time for the social worker and Nicey. Geiselle believes Nicey does not like her and is very spiteful. She doubts that Nicey will let her visit Vanessa once the juvenile court closes the case.

Vanessa's cousin Marlene testified on Geiselle's behalf, stating she used to have almost daily contact with Nicey and Vanessa but Nicey told her she could no longer see Vanessa because of Geiselle. Nicey's daughter now secretly brings Vanessa to visit Marlene. Marlene stated she believes Nicey's home is unsafe because of plumbing work, water problems and "things laying over the floor that kids can trip over." Marlene does not believe Nicey will let family members see Vanessa once she is adopted.

On rebuttal, Wahlig testified he was able to set up a visit every time Geiselle requested one. Every visit occurred except one when Geiselle canceled because she had to babysit her cousins. In his opinion, Geiselle made sincere efforts to maintain regular contact with Vanessa for the past six months but she could have attempted more visitation.

The court found by clear and convincing evidence that it is likely Vanessa will be adopted if parental rights are terminated, that none of the circumstances listed in section 366.26, subdivision (c)(1) exist which would make

---

[4]In a supplemental letter brief, counsel for Vanessa represented that Geiselle did send Vanessa a small doll for Christmas 1992. After Geiselle's parental rights were terminated, she also sent Vanessa a stuffed animal and some clothes.

termination of parental rights detrimental to Vanessa and that adoption was in Vanessa's best interest. Specifically, the court found by clear and convincing evidence that there has not been regular contact between Geiselle and Vanessa and continuing contact would not be beneficial to Vanessa. The court terminated Geiselle's parental rights and declared Vanessa free from her custody and control.

DISCUSSION

I-III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

Geiselle contends the statutory scheme of section 366.26 violates equal protection principles because it does not require "present evidence of parental unfitness" by clear and convincing evidence as does Civil Code section 232. She asserts no compelling state interest justifies the disparate treatment of parents in the two statutory classifications.

Under the equal protection clause, "[a] classification 'must be reasonable, not arbitrary, and must rest upon some grounds of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " (*Reed* v. *Reed* (1971) 404 U.S. 71, 76 [30 L.Ed.2d 225, 229, 92 S.Ct. 251]; *People* v. *Carrillo* (1984) 162 Cal.App.3d 585, 593 [208 Cal.Rptr. 684].) However, only where the state has adopted "a classification that affects two or more *similarly situated* groups in an unequal manner" are equal protection rights implicated. (*In Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549]; italics original.)

In reviewing California's statutory scheme to terminate parental rights, the court in *Cynthia D.* v. *Superior Court* (1993) 5 Cal.4th 242 [19 Cal.Rptr.2d 698, 851 P.2d 1307], recognized the distinction between proceedings under section 366.26 and Civil Code section 232. "A Civil Code section 232 proceeding to terminate parental rights is heard in the superior court as a new action in which the superior court must find by clear and convincing evidence the existence of statutorily specified grounds of parental fault. (Civ. Code, § 232, subd. (c).) The higher standard of proof is appropriate in light of the fact that this is a separate proceeding in which specific findings of fault or detriment are required. The present statutory scheme, by contrast, requires the juvenile court to conduct multiple hearings

---

*See footnote 1, *ante*, page 800.

and findings of detriment before the section 366.26 stage is reached. Thus the Civil Code section 232 proceeding is not comparable to a proceeding pursuant to section 366.26 in which parental rights are terminated." (*Cynthia D.*, *supra*, at p. 253, fn. 8.) Because dependency hearings under the Welfare and Institutions Code and those under Civil Code section 232 are " 'separate and distinct [proceedings], each serving an entirely different purpose,' " (*In re Jesse C.* (1989) 215 Cal.App.3d 1384, 1388 [263 Cal.Rptr. 811]), parents subject to the two different proceedings are not similarly situated. (See also *In re Taya C.* (1991) 2 Cal.App.4th 1, 9 [2 Cal.Rptr.2d 810] [different procedures on appellate review do not constitute denial of equal protection where two categories of parents are not similarly situated].)

In *In re Edward R.* (1993) 12 Cal.App.4th 116 [15 Cal.Rptr.2d 308], the court addressed a similar constitutional challenge to section 366.26 on equal protection grounds. The court held Civil Code section 232 does not provide greater safeguards to parents whose rights are subject to termination under that section than those whose rights may be terminated under the new statutory scheme, including section 366.26. (*Id.* at p. 124.) The court further held because the underlying premise of unequal treatment was absent, the issues of similarly situated parents and rational basis versus strict scrutiny analysis became moot. (*Ibid.*)

Although the specific equal protection challenge in *Edward R.* focused on a consideration of present circumstances that the parents are likely to fail to maintain an adequate parental relationship with the child in the future, the broader holding of that case applies here to Geiselle's challenge to the absence of the need to find present evidence of parental unfitness. Equal protection does not require application of the same kinds of factors and the same quantum of evidence where a different type of proceeding, based on different statutory purposes and involving a different category of parent, is before the court. Because parents whose rights are terminated under Civil Code section 232 and parents whose rights are terminated under section 366.26 are not similarly situated, we reject Geiselle's equal protection challenge.

DISPOSITION

The judgment is affirmed.

Benke, J., and Nares, J., concurred.

A petition for a rehearing was denied August 31, 1993, and appellant's petition for review by the Supreme Court was denied November 10, 1993.