Anthony W. ANDERSON, Sr., Plaintiff,

v.

CPL. Lloyd ROBERTS, etc., et al., Defendants.

No. CV 84–9206–AHS(G).

United States District Court, C.D. California.

Dec. 1, 1986.

James K. Hahn, City Atty., John T. Neville, Sr. Asst. City Atty., Wilma J. Pinder, Deputy City Atty., Los Angeles, Cal., for defendant Lloyd Roberts.

Anthony W. Anderson, Sr., in pro. per.

## ORDER

STOTLER, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and General Order No. 194, attached is the Report and Recommendation of the United States Magistrate who has reviewed the complaint filed herein.

■ The Court has reviewed the complaint, the file, and the attached Report and Recommendation of Magistrate Ralph J. Geffen, and concurs with and adopts the findings and conclusions stated therein. No objections have been made by the parties.

IT IS ORDERED that plaintiff shall not recover against defendant Stewart, and the action is dismissed as to said defendant; and

IT IS FURTHER ORDERED that plaintiff shall recover from defendant Roberts the sum of Five Thousand Dollars ($5,000.00), with costs of suit.

## REPORT AND RECOMMENDATION ON CIVIL RIGHTS COMPLAINT

Sept. 17, 1986

RALPH J. GEFFEN, United States Magistrate.

This Report and Recommendation is submitted pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) (1982) and General Order No. 194 of the United States District Court for the Central District of California.

### I.

This is a civil rights case under 42 U.S.C. § 1983, wherein the plaintiff sues two police officers (Los Angeles Police Department) for alleged deprivation, without due process of law, of his right to retain physical custody of his five-year old son.

Although plaintiff also sought to present a claim on behalf of the minor child, he was neither the appointed guardian ad litem of the child nor a licensed attorney; accordingly, the suit did not proceed on behalf of the child and the trial proceeded solely on behalf of the father.

### II.

The parties did not consent to trial by the United States Magistrate, and the evidentiary proceedings reported herein were held by the Magistrate under Local Rule (Duties of Magistrate) 3.1, pursuant to your direction following my forwarding to you of a pre-trial order and supporting documents on March 4, 1986.

### III.

Plaintiff appears herein *in propria persona;* defendants, Lloyd Roberts and Ronald Stewart, are represented by the City Attorney of Los Angeles, by Wilma J. Pinder, Deputy City Attorney. The hearing was held before me on May 8, 1986 and concluded on that date. The following were called and testified:

Anthony W. Anderson, Sr. (Plaintiff)
Ronald J. Stewart (Defendant)
Lloyd Roberts (Defendant)

The following exhibits were received into evidence:

## IV.

Upon consideration of all of the evidence and stipulations I make the following FINDINGS OF FACT and CONCLUSIONS OF LAW.

### FINDINGS OF FACTS

1.  Plaintiff is the natural father of Anthony Wayne Duncan, born in Indianapolis, Indiana on November 28, 1980.

2.  The natural mother of said child is Alice Evan Duncan.

3.  Plaintiff and the natural mother were never married.

4.  The birth records of said child do not show the name of any person as father of the child.

5.  Between the time of birth of the child and July 17, 1984, plaintiff and Alice Evan Duncan did not reside together.

6.  From December 1980 until approximately early 1984, the child resided principally with plaintiff, except September 1982 —February 1983, when the child was left with his mother in Indianapolis while plaintiff moved to and established residence in California, and was openly held out by plaintiff to be his natural child.

7.  The child's mother returned the child to him in Indianapolis in February 1983, and plaintiff returned to California with the child.

8.  In July 1983 the mother moved to Phoenix, Arizona.

9.  Plaintiff permitted the mother to take the child to Arizona in late July 1983, for what they agreed was to be a visit, with an agreement that the child would be returned to plaintiff in a week or two.

10.  The mother failed to return the child to plaintiff, moved back to Indianapolis, and took the child with her; in October 1983 the mother returned to Phoenix with the child.

11.  In early July 1984 plaintiff went to Phoenix to pick up the child; following a dispute over the mother's care of the child, and the filing of a child abuse complaint by plaintiff against the mother, the mother refused to turn the child over to plaintiff.

12.  On July 18, 1984 plaintiff again went to Phoenix, and found the child in the open near the mother's residence, under supervision of a neighbor adult.

13.  Without force or violence, but without consent of the neighbor or the mother, and without notice to the mother, plaintiff physically removed the child and brought him to California.

14.  Thereupon the mother filed a child-stealing complaint with the Phoenix Police Department, and an investigation was opened by that agency.

15.  The Phoenix Police Department advised the Los Angeles Police Department of the investigation and requested the latter to assist by verifying that the child was in the custody of plaintiff, and the address.

16.  Defendant Stewart was a sergeant, received the Phoenix Police Department request, and instructed defendant Roberts to carry out an investigation as to the address of plaintiff and whether the child was with him.

17.  At no time was there a court order re custody of the child, or for arrest of plaintiff, or for removal of the child from plaintiff's physical custody.

18.  At no time did defendants Stewart or Roberts believe that there was any such court order.

19.  At no time was the paternity of plaintiff in question, to the knowledge of defendants Roberts or Stewart.

20.  On July 23, 1984, plaintiff was contacted by defendant Roberts and another officer, and he and the child accompanied them to the police station, where he spoke with defendant Stewart.

21. At that time plaintiff told defendant Stewart that he was the father of the child, and that he had taken the child from Phoenix; plaintiff also verified that on the telephone to the Phoenix Police Department, on a call made by defendant Stewart.

22. Plaintiff was permitted by defendant Stewart to return to his home with the child.

23. On July 27, 1984, Alice Evan Duncan appeared at the Los Angeles Police Station, spoke to defendant Stewart, advised him that she intended to go to plaintiff's residence and retake possession of their son, and requested police assistance.

24. Defendant Stewart instructed a police officer (not Roberts) to go to plaintiff's residence "to keep the peace," and did not instruct the officer to take the mother there or to remove the child from plaintiff's possession.

25. Defendant Roberts volunteered to take over that function from the designated officer, stating that he was already familiar with plaintiff, his residence, and the situation.

26. Defendant Roberts transported the mother to plaintiff's residence in his police car on July 27, 1984.

27. Defendant Roberts' intent in so doing was to assist the mother and "keep the peace."

28. Defendant Roberts knew the mother's purpose in going to plaintiff's residence was to pick up the child.

29. At the residence, but outside in the front yard, the mother asked plaintiff to give her the child; plaintiff refused; the child was then playing nearby. The mother and plaintiff engaged in a heated argument, with cursing.

30. Plaintiff then picked up the child, and the child was upset and crying.

31. The mother tried to grab the child from plaintiff, who was holding the child tightly.

32. While defendant Roberts denied that he forcibly took the child from plaintiff, his testimony being that he told plaintiff to hand the child to him, and he would turn the child over to the mother, and that plaintiff complied, it is my finding that defendant used physical force to remove the child from plaintiff's grasp, and that resistance by plaintiff to such removal was diminished due solely to the official status and an order by the uniformed and armed officer (who had another such officer with him) to relinquish the physical custody of the child to the officer.

33. Defendant Roberts thereupon handed the child into the hands of the mother, intending that she enter the police car and be transported by him from that area with the child.

34. Defendant Roberts stood between the police car and plaintiff for a few minutes, during which plaintiff was prevented by defendant Roberts' physical intercession and by fear of what defendant Roberts and the other officer would do if he attempted to retake possession of the child, from retaking possession.

35. Plaintiff at no time agreed to give up physical custody of the child, and at all times acted in reasonable reliance upon the authority and physical power exerted by defendant Roberts at that time and place.

36. Defendant Roberts, after the mother and the child were in the police car, told plaintiff that he intended to transport them to the police station, and that plaintiff could meet them all at the police station.

37. Defendant Roberts drove away with the mother and child in the police car, and, at the mother's request, he drove them to the Los Angeles International Airport, knowing that the mother intended to board a plane with the son to return to Phoenix forthwith.

38. The mother did in fact return to Phoenix with the child.

39. Defendant Roberts did not advise defendant Stewart or plaintiff that he was taking the mother and child to the airport.

40. Defendant Stewart did not instruct or authorize defendant Roberts to take the mother and the child to the airport, and had no knowledge of defendant's intent to do so until after it had been accomplished.

41. At no time did defendant Roberts or the mother tell plaintiff that there was any court order re the custody of the child.

42. No danger to the minor child existed at the time of the taking of the child from plaintiff, and there were no other exigent circumstances which created an urgent need to take custody and control of the child from plaintiff at that time and place without due process of law. Compare *Lossman v. Pekarske*, 707 F.2d 288, 291–2 (7th Cir.1983).

43. As a result of the removal of the child from plaintiff's custody by defendant Roberts, plaintiff was deprived of the immediate comfort, love and companionship of his natural child.

44. Plaintiff at all times had a strong paternal love for the child and was very attached to him.

45. As a result of the conduct of defendant Roberts, plaintiff has suffered severe emotional distress.

46. As a result of the conduct of defendant Roberts, plaintiff suffered damages at the time thereof in the amount of Five Thousand Dollars ($5,000.00).

47. Defendant Stewart did not cause, or join with, act in concert with, or conspire with defendant Roberts to cause a deprivation of any rights of plaintiff.

## CONCLUSIONS OF LAW

1. Plaintiff was equally entitled with Alice Evan Duncan to the physical custody of Anthony Wayne Duncan under the laws of the State of California in 1984. California Civil Code §§ 197, 7004(a)(4); *People v. Johnson*, 151 Cal.App.3rd 1021, 1025, 199 Cal.Rptr. 231 (1984).

■ 2. The right of plaintiff to retain custody and control of his minor child is a fundamental right guaranteed by the United States Constitution, particularly the Fourteenth Amendment. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *cf. Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Lossman v. Pekarske, supra*, at 290.

3. Plaintiff was entitled to retain custody and control of his minor son free from interference by state action unless deprived thereof by due process of law. *Santosky, supra; Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Stanley, supra.*

4. Plaintiff was entitled to custody and control of his minor son as against all others except the mother, under Arizona law. *Caruso v. Superior Court*, 100 Ariz. 167, 412 P.2d 463, 467 (1966). The deprivation here, however, was in California and therefore California law controls.

■ 5. The taking of the child from the custody of the mother in Arizona, by plaintiff, without force or violence, in the absence of any court order determining custody, did not authorize the police authorities in California to deprive plaintiff of his liberty interest in the custody and control of his minor son in California without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

6. Defendant Stewart did not deprive plaintiff of any right which plaintiff had under the Constitution or laws of the United States.

■ 7. The conduct of defendant Roberts on July 23, 1984 was performed under color of state law, within the meaning of 42 U.S.C. § 1983.

8. The conduct of defendant Roberts on July 23, 1984 deprived plaintiff of his liberty interest in the custody and control of Anthony Wayne Duncan without due process of law, a right guaranteed by the United States Constitution.

■ 9. Defendant Stewart acted in good faith at all times in a reasonable belief that his conduct conformed to state and federal law and constitutional provisions, and is therefore immune from liability for any conduct by him in this matter. *Strutt v. Upham*, 440 F.2d 1236 (9th Cir. 1971).

■ 10. Defendant Roberts did not act in a good faith belief that his conduct in depriving plaintiff of the custody and control of the child without any court order or

due process of any kind conformed to state and federal laws and constitutional provisions, and any such belief, even if possessed by and acted upon by defendant Roberts, was not a reasonable belief; the law was clear and well-established, and defendant Roberts was an experienced California peace officer. *Cf. Bowens v. Knazze,* 237 F.Supp. 826, 828–30 (N.D.Ill.E.D.1965).

11. Defendant Roberts was not immune from liability for such conduct.

12. Liability in damages of defendant Roberts to plaintiff is established under 42 U.S.C. § 1983. *Duchesne v. Sugarman,* 566 F.2d 817 (2nd Cir.1977); *Lossman v. Pekarske, supra.*

### PROPOSED JUDGMENT

IT IS ADJUDGED that plaintiff shall not recover against defendant Stewart, and the action is dismissed as to said defendant; and

IT IS FURTHER ADJUDGED that plaintiff shall recover from defendant Roberts the sum of Five Thousand Dollars ($5,000.00), with costs of suit.