Filed 7/26/23  Newell v. Superior Court CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| LACIE ELIZABETH NEWELL, | C097303 |
| Petitioner, | (Super. Ct. No. F20-000357) |
| v. | |
| THE SUPERIOR COURT OF NEVADA COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

Following a preliminary hearing, real party in interest the People filed an information against petitioner Lacie Elizabeth Newell alleging that Newell absconded with her minor daughter L.K. for five months after the trial court granted L.K.'s father sole custody during an ex parte custody hearing.  Newell moved to set aside the

1

information on the ground that the People failed to establish a necessary element of the crime of child abduction.  The trial court denied the motion.  Newell brought a writ of prohibition in this court challenging that determination.  We stayed the criminal proceedings and issued an order to show cause.  We now conclude that the People failed to present sufficient evidence that Newell had knowledge that the trial court awarded L.K.'s father sole custody during the emergency custody hearing, and accordingly reverse the ruling denying her motion to set aside the information.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Evidence presented at the preliminary hearing*

Newell and her boyfriend Joshua Kerley had a daughter together, L.K., in February 2013.  In June 2013, Kerley was arrested and charged with felony domestic violence against Newell.  He subsequently pleaded no contest to the charge.  Kerley was placed on probation for five years, but he failed to comply with the terms of probation and consequently went to jail for six months.  When he was released in 2015, Kerley moved in with Newell and L.K.  Shortly thereafter, Newell obtained a domestic violence restraining order against Kerley, and though they later tried to coparent in the same home, Newell and L.K. eventually moved out in January 2019.  Kerley was given supervised visits with L.K.

On September 23, 2020, the trial court issued an order granting joint legal custody of L.K. to Newell and Kerley, with Newell having primary physical custody.  The order also generally described dates and times that Kerley was to have visits with L.K. from mid-September to mid-November 2020, subject to parental agreement or scheduling arranged by a designated facility that supervised visitation.  In reaching its ruling, the trial court found that there was no credible evidence to support Newell's allegations that Kerley sexually or physically abused L.K., instead finding it likely that Newell had coached L.K.  It further noted that Newell used delay tactics and violated court orders to frustrate Kerley's visitations, including "repeatedly changing attorneys," failing to obtain

2

records and comply with a court-ordered evaluation by a doctor, and failing to bring L.K. to visitation and co-joint therapy sessions. The court cautioned Newell that "a continuing failure to follow the Court's orders regarding visitation may result in an immediate change of custody from mother to father."

On October 14, 2020, Kerley appeared at an emergency hearing regarding custody of L.K. A written transcript of the ex parte hearing is not in the record, but Kerley testified to its contents at the preliminary hearing as follows.

Kerley and his counsel appeared in person at the ex parte proceeding. Newell did not personally attend the hearing, but Kerley recalled that an attorney representing Newell appeared telephonically. Kerley did not remember the attorney's name, but testified the attorney said he "wanted to be released from the case." Neither Kerley nor any other witness provided any further information regarding the attorney's appearance at the hearing or thereafter. Kerley testified that he had requested the ex parte hearing because he had not seen L.K. in "quite a while" and "hadn't heard anything." Kerley had attempted to meet L.K. for their supervised visitations "quite a few" times per their parenting agreement, but no one brought L.K. to Kerley, and Newell did not communicate with Kerley regarding the missed visits.

The trial court found that a temporary custody order was needed to "help prevent an immediate loss or irreparable harm to a party or to children in the case." It accordingly granted Kerley temporary sole legal and physical custody of L.K. and set the matter for further hearing on November 18, 2020. The trial court barred Newell from visitation with L.K. pending further order of the court.

Thereafter, Kerley promptly went to Newell's last known address with two police officers, but no one answered the door. In late October, Kerley hired a private investigator to help find L.K. The private investigator found a public Facebook post by someone purporting to post a letter at the direction of Newell. The private investigator shared the post with a criminal investigator for the Nevada County District Attorney's

3

Office.  The district attorney investigator had begun looking for Newell in December 2020.  He testified that the letter said Newell was a mother in hiding and that Newell believed the Nevada County courts were running a human trafficking ring.  The e-mail address connected to the post yielded no leads regarding L.K.'s or Newell's whereabouts.

In March 2021, the United States Marshals Service located Newell and L.K. in Santa Barbara.  They arrested Newell and placed L.K. in the custody of child protective services.  L.K. was returned to Kerley in April 2021.

B.  *Procedural history*

Based on the evidence presented at the preliminary hearing, the magistrate found probable cause that Newell committed child abduction within the meaning of Penal Code section 278.[1]  Accordingly, the People filed an information alleging that on or about October 15, 2020, to March 16, 2021, Newell committed a felony violation of section 278.

Newell pleaded not guilty to the charge and moved to set aside the information under section 995.  In doing so, she argued there was no evidence presented that she ever received notice of the October 2020 emergency order granting temporary sole custody to Kerley.  Thus, she asserted that there was no evidence that when she "acted" under CALCRIM No. 1250,[2] she lacked a right to custody over L.K.  The trial court denied the motion, finding the evidence sufficient for purposes of a preliminary hearing.  It set the matter for trial in November 2022.

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  CALCRIM No. 1250 provides that to prove a defendant guilty under section 278, the People must prove that (1) the defendant maliciously took or withheld a child from his or her lawful custodian; (2) the child was under the age of 18; (3) when the defendant acted, he/she did not have a right to custody of that child; and (4) when the defendant acted, he/she intended to detain or conceal the child from the child's lawful custodian.

4

Newell then petitioned this court for a writ of prohibition directing the trial court to reverse the order denying the motion to set aside the information. Alternatively, she sought an order to show cause why the relief requested in her petition should not be granted and a temporary stay of the trial. We granted the request for a stay and issued an order to show cause, asking the parties to address, in relevant part, whether constructive notice of a change in custody satisfies due process.[3] The People filed a return, and Newell filed a reply. We now consider the matter before us.

## DISCUSSION

### A.    *Standard of review*

Section 995 provides that an "information shall be set aside" if "the defendant has been indicted without reasonable or probable cause." (§ 995, subd. (a)(1)(B).) "In reviewing the denial of a [] section 995 motion to set aside an information, we 'in effect disregard[] the ruling of the superior court and directly review[] the determination of the magistrate holding the defendant to answer.' [Citations.] . . . . Insofar as [the section 995 motion] rests on consideration of the evidence adduced, we must draw all reasonable inferences in favor of the information [citations] and decide whether there is probable cause to hold the defendants to answer, i.e., whether the evidence is such that 'a reasonable person could harbor a strong suspicion of the defendant's guilt.' [Citations.]" (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1072.) "But 'where the facts are undisputed, the determination of probable cause "constitute[s] a legal conclusion which is subject to independent review on appeal." ' [Citations.]" (*People v. Black* (2017) 8 Cal.App.5th 889, 898.)

---

**3**    We also asked the parties to address whether a parent having joint physical custody of a child may commit child stealing by taking exclusive possession of the child. The People conceded that a parent with joint custody cannot be charged with child stealing under section 278 by taking the child into his or her sole custody. (See *People v. Irwin* (1984) 155 Cal.App.3d 891, 896-897.)

" ' "Evidence that will justify a prosecution need not be sufficient to support a conviction. . . . An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. [Citations.]" ' " (*Hudson v. Superior Court* (2017) 7 Cal.App.5th 999, 1006.) However, "where there is no evidence at the preliminary hearing of an essential element of the offense, dismissal is required." (*Barber v. Superior Court* (1991) 1 Cal.App.4th 793, 795.)

B.    *Analysis*

A person violates section 278 when that person, "not having a right to custody, . . . maliciously takes, entices away, keeps, withholds, or conceals any child with the intent to detain or conceal that child from a lawful custodian." (§ 278.) Section 277, subdivision (e) defines " 'right to custody' " as "the right to the physical care, custody, and control of a child pursuant to a custody order." (§ 277.) "[T]he California Supreme Court has made clear that in the absence of an order or decree affecting custody, a parent does not commit child stealing by taking exclusive possession of the child. (See *Wilborn v. Superior Court* (1959) 51 Cal.2d 828, 830-831.)" (*Cline v. Superior Court* (1982) 135 Cal.App.3d 943, 947.)

The statute also requires a showing of malice and intent. The word "maliciously," as used in section 278, is defined by the Penal Code, meaning "a wish to vex, annoy, or injure another person, *or* an intent to do a wrongful act, established either by proof or presumption of law." (§ 7, subd. (4), italics added; *People v. Simmon* (1936) 12 Cal.App.2d 329, 332 [" 'maliciously' " in section 278 is defined by the Penal Code]; see also *People v. Neidinger* (2006) 40 Cal.4th 67, 79 [applying the Penal Code's definition of malice to section 278.5].) " ' "[T]he requirement of malice functions to ensure that the proscribed conduct was 'a deliberate and intentional act, as distinguished from an accidental or unintentional' one." ' " (*People v. Jo* (2017) 15 Cal.App.5th 1128, 1159.) The pattern jury instruction accordingly requires proof that when the defendant acted, he

6

or she "intended to detain or conceal the child from the child's lawful custodian." (CALCRIM No. 1250.)

Thus, to establish the requisite probable cause to indict Newell, the People had to present evidence that Newell knew that she lost custody of L.K. and intended to take L.K. from L.K.'s lawful custodian, Kerley. Acknowledging that no evidence was presented in the trial court showing that Newell had actual knowledge or notice of the order granting Kerley temporary sole custody, the People argue instead that Newell's attorney's appearance at the ex parte hearing is sufficient to show Newell had constructive notice of the order. Newell responds that even if constructive notice through an attorney was enough to show that Newell had knowledge of the order, Kerley's testimony about an unnamed attorney seeking to withdraw was insufficient to establish constructive notice. We agree with Newell.

The presence of a party's attorney in court when an order is made is typically sufficient to show that a party had knowledge of the order. (*In re Imperial Ins. Co.* (1984) 157 Cal.App.3d 290, 300.) This is because an attorney is a client's agent, and notice to an agent constitutes constructive notice to the principal. (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1319.) Nonetheless, evidence of *notice* is not precisely equivalent to evidence of *knowledge* for purposes of a criminal prosecution. A fact finder may infer knowledge from notice, but notice alone does not necessarily satisfy the knowledge element in a criminal statute. (See *People v. Garcia* (2001) 25 Cal.4th 744, 752 ["a violation of section 290 requires actual knowledge of the duty to register. A jury may infer knowledge from notice, but notice alone does not necessarily satisfy the willfulness requirement"].)

Here, we need not decide whether constructive notice is sufficient to show Newell's knowledge and intent under section 278 because the People failed to produce evidence showing that Newell received even constructive notice of the custody order. The only evidence of notice is Kerley's vague testimony that an unnamed lawyer

7

telephonically appeared on Newell's behalf at the ex parte hearing and asked to be removed from the case. The record does not disclose whether the attorney stayed on the phone for the entire hearing, whether the attorney heard the trial court pronounce its ruling, or whether the attorney was indeed released from representing Newell at the hearing. The People also did not produce the ex parte pleadings, a transcript of the hearing, or a proof of service for the custody order.[4] The Judicial Council form emergency order itself, which is in the record, does not state who appeared at the hearing.

Acknowledging these evidentiary gaps, the People argue that we presume counsel acted in a professional manner without evidence to the contrary (see *People v. Stanley* (2006) 39 Cal.4th 913, 954), and therefore we may presume Newell's attorney attended the entire hearing and notified Newell of the resulting order. But here, the only (secondhand) evidence of the unnamed attorney's telephonic appearance described the attorney's request to withdraw from the case. To presume that the attorney stayed for the full hearing and notified Newell of the order would be purely speculative in light of her attorney's apparent desire to cease representation. (See *Forslund v. Forslund* (1964) 225 Cal.App.2d 476, 487 ["Where service on an attorney of record is permitted such service binds the client *until the attorney is discharged or substituted out of the case* as provided by law," italics added].) Thus, we cannot assume that Newell's attorney complied with any professional duties following the hearing if he was, in fact, discharged from those duties at the hearing. Indeed, the trial court previously observed that Newell had repeatedly changed attorneys throughout the case.

Moreover, it is unclear when Newell stopped communicating with Kerley and others. The record reflects that even before the October 2020 emergency hearing, Newell had consistently failed to communicate with Kerley and that her whereabouts were

---

**4** Kerley was required to personally serve Newell with the custody order after the hearing. (Cal. Rules of Court, rule 5.167(b).)

8

uncertain. And it took months for Kerley and investigators to locate Newell. This further undermines the presumption that Newell's attorney successfully contacted her and communicated the contents of the order to her after the hearing. Accordingly, we find that Kerley's testimony of Newell's purported attorney's telephonic presence is insufficient to establish probable cause that Newell had knowledge of the ex parte order and therefore acted with the requisite mental state to support prosecution under section 278.

We also find unpersuasive the People's argument that one could reasonably infer Newell knew of the change in custody order based on Newell's purported letter stating she was a "mother in hiding." The letter was posted by a third party on Facebook, supposedly on Newell's behalf; there is no evidence that Newell actually wrote the letter. And even if there was, stating she was a "mother in hiding" does not create a reasonable inference that Newell was aware of the new custody order. In fact, the record reflects that Newell consistently kept L.K. from Kerley and failed to communicate with him even when they shared custody.

Finally, while we agree with Newell that the People failed to present sufficient evidence of intent under section 278, we reject Newell's contention that the gaps in the evidentiary record establish that she was denied due process at the ex parte hearing, rendering the custody order a nullity. Although we have scant evidence on the process Newell received, the evidence we do have indicates that Newell's attorney may at least have received notice of the proceedings by virtue of his appearance.[5] Further, the fact the

---

[5]     In this sense, the case Newell relies upon, *People v. Johnson* (1984) 151 Cal.App.3d 1021, is distinguishable. In *Johnson*, the court affirmed the dismissal of a section 278 charge against the father, concluding that a temporary custody order granting custody to the mother was unenforceable because the order was never served on the father. (*Johnson, supra*, at p. 1026.) The court explained that "service of the order was a prerequisite to termination of his otherwise undoubted custodial rights. [Citation.] Absent actual knowledge nothing less would satisfy fundamental requirements of due

trial court granted Kerley's ex parte request suggests that Newell received process sufficient to justify issuance of the order. More fundamentally, although there is no evidence in the record that Newell or her attorney were served with ex parte papers before the hearing, or that either was served with the custody order, the *lack* of such evidence in the record does not prove that Kerley failed to comply with notice and service requirements. These documents may exist but were inexplicably excluded from the record; we cannot presume they do not exist and invalidate an order based on pure conjecture.

We do not condone Newell's conduct, which appears to have violated at least one court order. Nevertheless, because the People presented insufficient evidence at the preliminary hearing of an essential element of a violation of section 278, the information must be set aside.

## DISPOSITION

Although Newell sought relief by way of prohibition, the court exercises its discretion to grant relief by way of mandate. (See *George M. v. Superior Court* (1988) 201 Cal.App.3d 755, 760.) Accordingly, let a peremptory writ of mandate issue directing the respondent court to vacate the order denying Newell's motion to set aside the

---

process." (*Ibid*.) However in *Johnson*, the record affirmatively revealed that the mother, unable to locate the father, did not provide *any* notice to the father of the ex parte hearing or the resulting order. (*Ibid*.) Here, again, Newell's attorney's appearance at the ex parte hearing suggests Kerley gave notice, and there is no basis to conclude the trial court violated her due process rights by issuing the order.

information, and enter a new order granting the motion.  The stay issued by this court on November 17, 2022, is vacated upon finality of this opinion.


                                           _____KRAUSE_____, J.


We concur:


_____MAURO_____, Acting P. J.


_____MESIWALA_____, J.

11